UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | BK No.: 11-27030 |
| FRIEDMAN & WEXLER, LLC | ) | |
| | ) | Chapter: 7 |
| | ) | Honorable Timothy A. Barnes |
| | ) | |
| Debtor(s) | ) | |

**Final Order Compelling Trustee To Release Equipment & Establishing Rules and Balloting for Creditors Seeking Deletion or Recovery of Confidential Data**

This matter coming forth on motion of TUCANS LLC, an Illinois limited liability company, and Michael Friedman individually, to compel Chapter 7 Trustee for Friedman & Wexler LLC David Herzog (the "Trustee") to release certain property belonging to TUCANS LLC and Michael Friedman pursuant to 11 U.S.C. § 725, due notice being given and the Court being duly advised in the premises,

IT IS HEREBY ORDERED:

1. The property listed on the attached Schedule A, Exhibit 25 to the Motion (the "Equipment"), shall be abandoned by the Trustee as of April 1, 2013 to TUCANS LLC and to Michael Friedman, unless that date is extended at the sole discretion of the Movants.

2. The Trustee shall serve ~~this Notice and Order~~ the Ballot Form and this Order by deposit with the U.S. Mail no later than January 25, 2013, upon all former clients of Friedman & Wexler, LLC ("Clients") known to the Trustee as of that date.

3. All Clients shall have until March 1, 2013 ("Bar Date") to notify the Trustee and the Movants of their election to inspect the data storage devices (the "Drives") amongst the items on the attached Schedule A pursuant to the terms set forth in this Order.

4. Election pursuant to this Order shall be made using the form attached to this Order (the "Election Form"). In order to be effective, the Election Form must be received by the Trustee no later than 5:00 P.M. Central Standard Time, March 1, 2013, at the following addresses:

David Herzog, Chapter 7 Trustee
c/o James E. Morgan
ENTERPRISE LAW GROUP, LLP
150 South Wacker Drive, Suite 1600
Chicago, IL 60606
Fax: 312-578-0202

with copy to:

Jonathan D. Golding, Esq.
THE GOLDING LAW OFFICES, P.C.
500 North Dearborn Street, Ste. 200

Chicago, IL 60654
Fax: (312) 755-5720

5. Clients may elect one of the three following treatments:

A. OPT-OUT: Clients may elect not to participate. Clients that elect not to participate, or that fail to timely notify the Trustee of their election, shall incur no additional costs as a part of the examination, destruction, or distribution of the data. Clients that elect not to participate, or that fail to timely notify the Trustee of their election on or before the Bar Date, shall be barred from seeking examination, destruction, or distribution of any of their data which may be stored on the Drives.

B. SEGREGATED OR DELETED DATA: Clients may elect to participate in the examination of the data on the Drives by a third-party expert (the "Expert") to be selected at the sole discretion of the Trustee, subject to Paragraph 6 below. The Expert shall have the reasonable cooperation of the Movants in conducting the examination, segregation, and/or deletion of the data from the Drives. Each Client electing to participate in the examination shall pay pro rata for the services of the Expert. Each Client electing to participate in the examination, with the exception of VW Credit, Inc., shall retain the services of the Movants separately, subject to Paragraph 13 below. Clients making a timely election for examination of the data shall have any and all of their data which is identified by the Expert and the Movants extracted from the Drives by the Experts and the Movants, and either destroyed or provided to the client prior to any distribution to other parties or abandonment of the remaining data stored on the Drives.

C. PRESERVED BULK DATA: Clients electing for distribution of the data share equally in the expense of copying and distributing the data, including the expense of the data storage device to be distributed to the Client. The methods and cost of this distribution shall be determined at the sole discretion of the Trustee. Clients electing for distribution of the data shall receive all of the data not previously destroyed pursuant to Paragraph 5B above, including the data of other Clients electing for 5A or 5C treatment. Clients electing for distribution shall take possession of the data subject to the restrictions set forth in this Order.

6. Precision Discovery (the "Expert") shall perform the examination of the data pursuant to Paragraph 5B above, unless unable to do so. In the event Precision Discovery is unable to perform this service, the Trustee shall select another Expert at his sole discretion.

7. Examination pursuant to Paragraph 5B above shall be completed no later than April 1, 2013 unless that date is extended at the sole discretion of the Movants.

8. Each Client electing to receive a copy of the Preserved Data is prohibited from using, accessing, manipulating, downloading, uploading, saving, viewing, conveying, or disseminating any confidential data pertaining to or belonging to the Estate of the Debtor Friedman & Wexler LLC, or to any other Client of Friedman & Wexler LLC, or to any debtor or customer of any other Client of Friedman & Wexler LLC (excepting debtors or customers which are also debtors or customers of the Client electing to receive a copy of the Preserved Data) which is contained on the Equipment. Any Client in possession of such confidential data pursuant to this Order may destroy said data.

9. The Trustee and his agents are authorized but not required to retain copies of any and all of the confidential data for the purpose of administering the Estate of Friedman & Wexler LLC. The Trustee and his agents are prohibited from conveying or disseminating any confidential data pertaining to or belonging to any other Client without the written consent of that Client. The Trustee and his agents shall destroy all copies of the confidential data in their possession or control prior to the close of this bankruptcy case.

10. The Movants are prohibited from using, accessing, manipulating, downloading, uploading, saving, viewing, conveying, disseminating, or deleting any confidential data pertaining to or belonging to the Estate of the Debtor Friedman & Wexler LLC or to any Client of Friedman & Wexler LLC which is contained on the Equipment without the written consent of that Client or further order of this Court.

11. If and when the Movants sell, transfer, abandon, or otherwise dispose of the Equipment abandoned by the Trustee to the Movants hereunder, the Movants shall destroy any and all data and data storage devices therein prior to selling, transferring, abandoning or otherwise disposing thereof, unless the Equipment is being transferred to an entity owned by one of the Movants. Said transferee shall take the Equipment subject to this Order, including without limitation the restrictions contained in Paragraphs 10 and 11.

12. The Movants, by and through Michael E. Friedman ("Friedman"), shall make him available at a mutually agreed upon time to perform the removal, copying, and destruction of the confidential data under the supervision and control of the Expert.

13. Friedman shall provide his reasonable services at no charge to VW Credit, Inc. All other Clients shall negotiate an hourly or flat rate with Friedman for his services extracting and destroying or delivering data to the Client pursuant to Paragraph 5B above. Said rate shall be subject to, but not require, approval of this Court. If Clients other than VW Credit, Inc. are unable to reach an agreement with Friedman as to his services, they shall be entitled to a copy of the preserved data subject to the terms of Paragraphs 5C and 8 above.

14. The Equipment shall be immediately released to the shared custody of the Movants to be moved from its current location in the offices of Roberts & Weddle LLC to the offices of the Movants at 1530 N. Dayton, 2nd Floor, Chicago, IL 60642 at the expense of the Movants where is shall remain in the shared custody and control of the Trustee subject to this Order.

15. At the offices of the Movants the Equipment shall be installed and set up by David Zion of DnA-Techs, 2744 West Morse Avenue, Chicago, Illinois ("Zion"). Zion shall install password protection which prevents access to the data contained on the Equipment by anyone without the password. The password shall be provided only to the Expert and to the Trustee, and not to the Movants or to any other party until such time as the Equipment shall be abandoned to the Movants, except that the password may be provided to Zion to effectuate repairs at the sole discretion of the Trustee. The Expert is authorized to change the password at any time so long as the new password is immediately provided to the Trustee.

16. Friedman shall provide to the Trustee the names and addresses of any Clients known to him by January 20, 2013. Friedman is hereby authorized to send copies of this Order to Clients directly and shall provide the Trustee with a list of all Clients to which he sends this Order on or before the Bar Date.

17. Movants shall pay to the Trustee on behalf of the Estate 1% of any fees paid by Clients to the Movants pursuant to Paragraphs 5B and 13 above.

18. Movants shall remain subject to the jurisdiction of the United States Bankruptcy Court with respect to any disputes arising out of their rights, duties, and obligations hereunder, and the United States Bankruptcy Court retains jurisdiction to resolve such disputes.

Enter: [signature]

Dated: 15 JAN 2013

United States Bankruptcy Judge

**Prepared by:**

Jonathan D. Golding, Esq. (ARDC #6299876)
THE GOLDING LAW OFFICES, P.C.
500 North Dearborn Street
Chicago, IL 60654
Tel: (312) 832-7885
Fax: (312) 755-5720
jgolding@goldinglaw.net

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| In re: | ) | Chapter 7 |
|---|---|---|
|  | ) |  |
| **FRIEDMAN & WEXLER, LLC** | ) | 11-27030 |
|  | ) |  |
| Debtor | ) | Hon. Timothy Barnes |
|  | ) |  |

<u>BALLOT FORM FOR CREDITORS SEEKING DESTRUCTION OR RECOVERY OF CONFIDENTIAL DATA</u>

TO:
CREDITOR 1
123 FAKE STREET
ANYTOWN, IL 60000

**Please see attached order for additional details.**

**In order to be effective, the Election Form must be received by the Trustee no later than 5:00 P.M. Central Standard Time, March 1, 2013, at the following addresses:**

| | |
|---|---|
| David Herzog, Chapter 7 Trustee | with copy to: |
| c/o James E. Morgan | Jonathan D. Golding, Esq. |
| ENTERPRISE LAW GROUP, LLP | THE GOLDING LAW OFFICES, P.C. |
| 150 South Wacker Drive, Suite 1600 | 500 North Dearborn Street, Ste. 200 |
| Chicago, IL 60606 | Chicago, IL 60654 |
| Fax: 312-578-0202 | Fax: (312) 755-5720 |

You may elect one of the three following treatments, Option A, Option B, or Option C. Please indicate your choice by marking the appropriate box with an "X".

**[ ] OPTION A: OPT-OUT.** Clients may elect not to participate. Clients that elect not to participate, or that fail to timely notify the Trustee of their election, shall incur no additional costs as a part of the examination, destruction, or distribution of the data. Clients that elect not to participate, or that fail to timely notify the Trustee of their election on or before the Bar Date, shall be barred from seeking examination, destruction, or distribution of any of their data which may be stored on the Drives.

**[ ] OPTION B: SEGREGATED OR DELETED DATA.** Clients may elect to participate in the examination of the data on the Drives by a third-party expert (the "Expert") to be selected at the sole discretion of the Trustee, subject to Paragraph 6 of the attached Order. Each Client electing to participate in the examination shall pay pro rata for the services of the Expert. Each Client electing to participate in the examination shall retain the services of the Movants

**CONTINUED ON NEXT PAGE**

separately, subject to Paragraph 13 below of the attached Order. Clients making a timely election for examination of the data shall have any and all of their data which is identified by the Expert and the Movants extracted from the Drives by the Experts and the Movants, and either destroyed or provided to the client prior to any distribution to other parties or abandonment of the remaining data stored on the Drives.

[ ] **OPTION C: PRESERVED BULK DATA.** Clients electing for distribution of the data share equally in the expense of copying and distributing the data, including the expense of the data storage device to be distributed to the Client. The methods and cost of this distribution shall be determined at the sole discretion of the Trustee. Clients electing for distribution of the data shall receive all of the data not previously destroyed pursuant to Option B above, including the data of other Clients electing for Option A or Option C treatment. Clients electing for distribution shall take possession of the data subject to the restrictions set forth in the attached Order.

Signed:

_____

Title:_____
CREDITOR 1
123 FAKE STREET
ANYTOWN, IL 60000

# EQUIPMENT SCHEDULE

**Computer Room Equipment at Roberts and Weddle Items that came from LOLF and/or paid by MF et al:**

1. One HP Wheeled Server Rack containing the following:
    a. 3 HP Proliant Rack Mounted Servers
    b. 2 Intel Rack Mounted Servers called Domain Controllers - white in color front panels
    c. 1 Rack Mounted APC Battery Backup Unit - originally LOLF
    d. 1 HP Rack Mounted Overhead Cooling Fan Unit - originally LOLF
    e. 1 IBM rack Mounted server
       **Above items containing the following but not limited to**
    f. A copy of the F&W database which was used to wind down F&W as per their request which allowed the transfer of accounts from F&W to R&W per the client request or to look something up for the clients
    g. The R&W database which they should no longer be using as they have no license to use it
    h. Copies of clients databases
    i. Source code and exactable code (compiled)for the internet functions which allows access for clients
    j. My Exchange server which contains the e-mail system including personal e-mails and e-mails covered under attorney client privilege. The .PST files that Dykema's person was allowed to search for instances of Citibank
    k. A shared drive that had a folder marked just for me which would have had all of the pleadings deps etc from the FMI v Citi et al as well as the state court action.
    l. Assorted other programs and documents that were put together
    m. A Web server / FTP that contained the FTP site so client could transfer up and pick up program changes/database changes. Including the software to do this. It also hosted the web site
2. Two KVM switches
3. Three 24 port switch/hubs

**Office Equipment - Michael Friedman's personal**

1. Michael Friedman's personal work station - Black in color case made by Antec, Logitech keyboard and Microsoft mouse
2. Michael Friedman's Viewsonic 22' monitor
3. Michael Friedman's scanner model HP 7650
4. Michael Friedman's Zerox Color Printer on wheeled cart purchased by MF once we were located at 111 Canal never reimbursed

5. One Executive Desk Set including matching chair and 2 slider chairs and Small Office Conference Desk and Approximately 6 Book Cases - all for Michael Friedman's Office Collection i.e. all matching
6. 1 Bose Speaker System

**Office Equipment - Marcy's Office**
1. Marcy's workstation delivered sometime in October or early November - case is Nvidia that has a green light connected to internal Fan - never paid for
2. Marcy's monitor, Logitech keyboard and Microsoft mouse
3. Marcy's scanner
4. 1 Speaker system
5. 1 quick books software

**Office Equipment - other**
6. 1 tractor feed Epson Printer on wheeled cart
7. One HP Jet Direct print server connected to the Epson Printer above
8. 2 HP Laser Jet Printers on wheels
9. 2 hp printers 1 in Roberts Office and one in Weddel's office
10. 1 Bose speaker system in Robert's office
11. 2 White Boards. One large in conference room and one small in Michael Friedman's office
12. Approximately 5 small port switches
13. One Marble Block for reception area
14. I safe at least 15 to 20 years old that came from LOLF - Migun [sic] is the brand name
15. 1 IBM server that used to be Michael Friedman's personal computer set up with 3 hot swop disk drives in a Raid 5 array
16. 1 Xerox color printer outside conference room
17. In accounting office, 4 workstations, 2 were Marcy's 1 was MaryAnn's and 1 was Linda's including Monitors, keyboards and mouse's
18. Multiple Pictures
19. Assorted Office Equipment and Supplies - staplers, etc
20. 2 Fluke meters
21. assorted copies of software with licenses such as Windows XP, Windows server 2008 and 2003 and Exchange Server
22. 2 servers delivered on Monday November 15, 2010 never paid for

**Office Equipment - Transferred to MF/TUCANS, LLC by Norman and Mitchell Wexler**
23. One Avaya Phone System
24. Approximately 5-6 floor mounted servers - located in Server Room - some may be from LOLF and/or built and paid for by MF
25. All Patch Cords including Patch Panels
26. Three Monitors

27. Approximately 22 work stations, keyboards, monitors and mousses - some may be from LOLF and/or built and paid for by MF
28. Approximately 22 Avaya Telephones
29. Two to Three Fax Machine's
30. One security system including 4 cameras
31. Approximately 22 Chairs